**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**
Judge John L. Kane

Civil Action **No. 1:11-cv-1534-AP**

**WILDERNESS WORKSHOP,
NATURAL RESOURCES DEFENSE COUNCIL,
THE WILDERNESS SOCIETY**, and
**SIERRA CLUB**

       Plaintiffs,

v.

**ALLEN CROCKETT**, in his official capacity as a representative of the Bureau of Land Management; and
the **BUREAU OF LAND MANAGEMENT**.

       Defendants,

   and

**WILLIAMS PRODUCTION RMT COMPANY, LLC,** and
**ANTERO RESOURCES PICEANCE CORPORATION**,

       Defendant-Intervenors.

---

**ORDER**

---

Kane, J.

       This matter is currently before me on Defendant-Intervenors' Joint Opposed Motion to Supplement Adminstrative Records (doc. 40) and Plaintiffs' Motion to Strike and to Complete, or Alternatively Supplement, the Administrative Record (doc. 41). Based on the forthcoming discussion, Defendant-Intervenors' motion is DENIED, and Plaintiffs' motion is DENIED in part and GRANTED in part.

BACKGROUND

Garfield County, Colorado, is no stranger to natural resource booms. In the late 1970s and early 1980s, it was ground zero for industry research, development, and demonstration efforts to extract and refine crude oil from kerogen shale. Massive infrastructure investments fueled rapid economic growth. After oil prices plummeted, however, those efforts were abandoned and Garfield County plunged into a recession.

Over the past decade, Garfield County has experienced a similar economic expansion, this one related to natural gas production. Although temporarily slowed by the recent economic downturn, this recent upswing shows no sign of abating. As a result of increased natural gas development, Garfield County has bucked national trends: unemployment in Garfield County is well below the national average and housing prices have significantly increased. This economic boon is not, however, without consequence or controversy. Left unregulated, natural gas development threatens to cause significant environmental harm. Although the extent and nature of that harm is unclear, it is undisputed that natural gas production has the potential to emit significant amounts of air pollution.[1] *See, e.g.*, Oil and Natural Gas Sector: New Source Performance Standards and National Emission Standards for Hazardous Air Pollutants Reviews,

---

[1] In addition to the readily acknowledged air pollution impacts of natural gas drilling, there is a growing body of evidence that a prominent natural gas extraction technique, hydraulic fracturing, has the potential to contaminate drinking-water. *See* Stephen G. Osborn, Avner Vengosh, Nathaniel R. Warner, and Robert B. Jackson, *Methane Contamination of Drinking Water Accompanying Gas-Well Drilling and Hydraulic Fracturing*, 108 Proceedings of the National Academy of Sciences 8172 (May 17, 2011); *see also* Dominic C. DiGiulio, Richard T. Wilkin, Carlyle Miller, and Gregory Oberley, *Investigation of Ground Water Contamination near Pavillion, Wyoming (DRAFT)*, available at http://www.epa.gov/region8/superfund/wy/pavillion /EPA_ReportOnPavillion_Dec-8-2011.pdf. These studies are, however, preliminary, and there has been no definitive link between hyrdaulic fracturing and groundwater pollution.

76 Fed. Reg. 52738 (Aug. 23, 2011).[2]

Fortunately, however, natural gas development in Garfield County is not unregulated. Depending on the location of a deposit, natural gas production is governed by a variety of local, state, and national regulatory regimes. Most relevant to the instant challenge, development of natural gas resources on federal lands is subject to the procedural requirements of the National Environmental Policy Act ("NEPA"). 42 U.S.C. §§ 4321 *et seq.*.

In conducting its NEPA-related analyses for proposed natural gas development in Garfield County, Defendants have relied heavily on findings contained in the the Environmental Impact Statement accompanying the 2006 Roan Plateau Proposed Resource Management Plan Amendment ("Roan EIS"). Among its other findings, the Roan EIS dismissed air quality concerns, concluding, "Assumed levels of oil and gas development within the Planning Area during the 20-year period of analysis are not projected to cause an exceedance of any applicable standard or threshold affecting human health and the environment." Roan Plateau Proposed Resource Management Plan Amendment and Final Environmental Impact Statement, AR-GL001952 at AR-GL002268.

Plaintiffs have filed suit, arguing that BLM's continued reliance on the air quality analysis contained in the Roan EIS violates NEPA. Because the Roan EIS only addresses drilling in the Roan Plateau Planning Area, they argue its air quality analysis does not apply to

---

[2] For a more thorough discussion of health impacts, including air quality impacts, attributable to natural gas development in Garfield County, see Roxana Witter, Lisa McKenzie, Meredith Towle, Kaylan Stinson, Kenneth Scott, Lee Newman, and John Adgate, *Health Impact Assessment for Battlement Mesa, Garfield County, Colorado* (February 2011), available at http://www.garfield-county.com/environmental-health/battlement-mesa-health-impact-assessment-draft2.aspx

oil and gas drilling outside the Roan Plateau Planning Area. Accordingly, Plaintiffs argue Defendants' reliance on the air quality analysis contained in the Roan EIS in approving the Spruce Creek Master Development Plan ("MDP"), the North Castle Springs MDP, and the West Mamm MDP is misplaced. Thus, according to Plaintiffs, Defendants' approvals of these three projects are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

After the Defendants submitted the administrative records for the challenged decisions, Defendant-Intervenors and Plaintiffs filed the instant motions seeking to strike documents from the records and to complete and/or supplement the records with additional documents.

## DISCUSSION

Because the National Environmental Policy Act does not provide for a private right of action, review of Plaintiffs' claims is governed by the Administrative Procedure Act. 5 U.S.C. § 704; *see, e.g.*, *Wyoming v. U.S. Dep't of Agric.*, 661 F.3d 1209, 1226 (10th Cir. 2011). Accordingly, that review is generally limited to the record before the agency at the time of Defendants' challenged actions. 5 U.S.C. § 706; *see, e.g.*, *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1272 (D. Colo. 2010).

The initial responsibility for designating the record of the challenged actions lies with Defendants. To the extent it is consistent with established procedures, their designation of the record is generally afforded a presumption of regularity. *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993). Absent argument to the contrary, I assume Defendants' designation of the record in this case is consistent with their established procedures and I presume the record to be properly designated.

This presumption is not, however, determinative. Defendants may not omit evidence and documents considered in the decisionmaking process. *See Camp v. Pitts*, 411 U.S. 138, 142. Nor, with limited exception, may they include in the record evidence and documents not considered in reaching the challenged decision. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971). Accordingly, Plaintiffs or Defendant-Intervenors may rebut the presumption of regularity by adducing clear evidence that the record is either over- or under-inclusive. *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1254 (D. Colo. 2010). Upon such a showing, I must either strike from the record documents that were not before the agency at the time of the challenged decision or complete the record with documents that were in fact considered by the agency. Once the proper composition of the record is ascertained, I must then consider exceptions allowing supplementation of the record with materials not actually considered by the agency, but which are necessary for the court to conduct a substantial inquiry.[3]

Applying this framework to the instant motions, I begin by reviewing Plaintiffs' motion to strike documents from the record before turning to their motion to complete the record. Finally, I turn to Plaintiffs' and Defendant-Intervenors' motions to supplement the record.

### *Plaintiffs' Motion to Strike*

Plaintiffs argue that two items should be stricken from the administrative record: the Automated Fluid Minerals Support System ("AFMSS") database and the Declaration of Allen B. Crockett (doc. 38-6). Because Plaintiffs' objections to these items are significantly intertwined, I

---

[3] I incorporate by reference my lengthy discussion of these standards found in *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243 (D. Colo. 2010) and *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267 (D. Colo. 2010).

consider them in tandem.

The AFMSS is a database in which Bureau of Land Management land law examiners record all applications for permits to drill ("APDs"). Its contents are not static; instead, they change with every entry. The database is frequently used by the Bureau of Land Management to generate reports, which can include information relating to the number and location of applications to drill in a specified area.

As a threshold matter, it is important to note that the record includes the AFMSS database in name only; the contents of the AFMSS database are not actually included in the administrative record. According to Defendants, they "included" the AFMSS database because it was indirectly considered by BLM Supervisor Allen Crockett in reaching the challenged decision. As both parties concede, Defendants cannot generate post-decisional evidence by running after-the-fact queries. Nor can Defendants directly rely on information contained in the database, but not included in the administrative record, as justification for their challenged decisions.

Plaintiffs' primary contention is with Defendants' indirect reliance on the contents of the AFMSS database via Mr. Crockett's declaration. In his declaration, Mr. Crockett alleges that, because of routine database queries conducted in the course of his employment, he was generally aware of the number of APDs issued in the Colorado River Valley Field Office. He states that this knowledge informed the decisionmaking process.

Plaintiffs argue this constitutes a post hoc rationalization unsupported by the record and contradicted by its post-decisional correspondence with the agency. Although Defendants acknowledge the declaration was not actually considered in the course of the challenged

decisionmaking, they argue it is necessary to ensure meaningful review of the challenged decisions.[4] Specifically, they argue the declaration explains the manner in which data from the AFMSS database was relied upon.

Plaintiffs' arguments, though based on legitimate concerns, do not justify striking Mr. Crockett's declaration. To the extent the declaration explains the relevance of specific AFMSS database queries contained in the record, it permissibly contributes to review of the challenged decisionmaking. The declaration cannot, however, introduce facts or arguments unsupported by the record.

Accordingly, Plaintiffs motion to strike is denied.[5] Defendants' use of these materials is not, however, without limitation. Although Defendants may use these materials to explain the contents of the administrative record, they may not rely upon them as independent justification for rationales otherwise unsupported by the administrative record.

*Plaintiffs' Motion to Complete*

Plaintiffs next argue that the record should be completed with the decision notices and environmental assessments ("DN/EAs") for thirty projects in the Colorado River Valley Field Office that relied upon the Roan EIS. Because these DN/EAs were approved by either Allen

---

[4] As Plaintiffs note, Defendants failed to file a separate motion seeking to supplement the record with Mr. Crockett's declaration. Although nominally required by the local rules, it is most efficacious to waive that requirement in this circumstance.

[5] Plaintiffs seek to include in the record their communications with agency staff documenting Defendants' contemporaneous knowledge of the number of permitted wells relying upon the air quality analysis in the Roan EIS. These documents are, however, largely irrelevant to Mr. Crockett's statements, which address his general knowledge of the number of permitted wells. Should Defendants seek to argue that Mr. Crockett had knowledge of the number of permitted wells tiered to the Roan EIS, however, Plaintiffs should file a renewed motion seeking to supplement the record with those communications.

Crockett, the decisionmaker who approved the challenged projects, or Steven Bennett, the current field manager of the Colorado River Valley Field Office where Mr. Crockett works, Plaintiffs argue they were directly and/or indirectly considered by the relevant decisionmaker. Defendants argue that because Plaintiffs allege these DN/EAs weren't analyzed as part of the cumulative impacts analysis for the challenged decisions, they cannot now argue that they were in fact considered by the relevant decisionmakers.

Defendants' argument conflates the standard for completing an administrative record with the standard for prevailing on the merits of Plaintiffs' cumulative impacts claim. It is possible to demonstrate that a decisionmaker has considered a document, which would require its inclusion in the record, without ceding the ultimate issue of whether that document was analyzed in the context of the cumulative impacts analysis. The deficiency of Defendants' argument notwithstanding, however, Plaintiffs have failed to establish that these documents were directly or indirectly considered in the context of the challenged decisions.

In order to justify completion of the record with the proffered documents, Plaintiffs must adduce clear evidence of (1) when the documents were presented to the agency; (2) to whom; (3) and under what context. *See WildEarth Guardians*, 713 F. Supp. 2d at 1254. Plaintiffs easily meet the first two elements, the documents were created or reviewed by Allen Crockett, the relevant decisionmaker; however, they fail to adequately establish the third element.

Plaintiffs must establish by clear evidence "the context in which materials were considered by decision makers in the <u>relevant decision making process</u>." *Id.* at 1256 (emphasis added). Neither the fact that Mr. Crockett created or considered the challenged documents in the context of other decisions nor the inclusion of "boilerplate" language in these documents

8

establish that he considered them in the context of the challenged decisions.  At best, Plaintiffs' circumstantial evidence suggests a likelihood that the relevant decisionmakers were aware of these documents in reaching the challenged decisions.  Awareness does not, however, constitute consideration.  Absent clear evidence that these DN/EAs were actually considered by the relevant decision makers, I defer to the agency's designation of the administrative record.  *See id.*

### *Plaintiffs' Motion to Supplement*

In the alternative, Plaintiffs seek to supplement the record with the above noted DN/EAs.  Plaintiffs argue that the proffered DN/EAs illuminate a broad section of analysis that is wholly lacking in the record.  Specifically, they argue the DN/EAs offer further proof that Defendants failed to ensure that drilling projects tiered to the Roan EIS fell within the scope of that EIS.  They also argue that these DN/EAs are directly relevant to determining whether Defendants adequately considered the cumulative air quality impacts of the challenged actions in combination with past, present, and reasonably foreseeable future oil and gas development in the region.

Defendants counter, suggesting that the DN/EAs are not necessary to review of the challenged decisions.  Furthermore, even if those documents would be necessary to fully explain the challenged decisions, Defendants argue the list of DN/EAs proffered by Plaintiffs would provide sufficient basis for determining whether Defendants should have considered those DN/EAs in reaching the challenged decisions.

Ordinarily, the record on review must be limited to the evidence before the agency at the time it made the challenged decisions.  *See, e.g.*, *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at

1273-74 (citing *Overton Park*, 401 U.S. at 420; *Camp v. Pitts*, 411 U.S. 138, 142 (1973); and *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)). There are, however, exceptions by which the parties may supplement the record with extra-record evidence.

Although the contours of these exceptions are somewhat muddled, the Tenth Circuit has repeatedly recognized an exception when "the record is deficient because the agency ignored relevant factors it should have considered in making its decision."[6] *See, e.g.*, *Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1028 n.1 (10th Cir. 2001) (quoting *Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985)).  Most relevant to Plaintiffs' challenge, the Tenth Circuit has tacitly recognized the relevance of extra-record evidence in NEPA cases where there are gaps or inadequacies in the NEPA process. *See Citizens for Alt. to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007) (quoting *Lee*, 354 F.3d at 1242) ("In dealing with scientific and technical evidence, extra-record evidence 'may illuminate whether an [environmental impact statement] has neglected to mention a serious environmental consequence, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism . . . under the rug'") (alterations in original).

Plaintiffs fail to articulate how the DN/EAs inform the determination of whether the challenged drilling projects fell within the scope of the Roan EIS.  They have, however, successfully established the necessity of the DN/EAs to a determination of their claim that Defendants have failed to analyze the cumulative air quality impacts of the challenged actions in combination with past, present, and reasonably foreseeable future oil and gas development in the

---

[6] For a more thorough discussion of the uncertainty surrounding the exact contours of these exceptions see *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1278-79.

region. In order to assess whether the challenged decisions contained any analysis of the air quality impacts of other projects in the region, it is necessary to determine the nature of those air quality impacts as specified in the DN/EAs for those projects.

Accordingly, the administrative record should be supplemented with the DN/EAs listed in Plaintiffs' Exhibit G (doc. 41-7) to their Motion to Strike and to Complete, or Alternatively Supplement, the Administrative Record. Those documents are, however, only admissible for the purpose of determining whether Defendants considered the cumulative air quality impacts of the challenged actions in combination with past, present, and reasonably foreseeable future oil and gas development in the region.

*Defendant-Intervenors' Motion to Supplement*

Defendant-Intervenors seek to introduce an April 25, 2011 memorandum sent from BLM Supervisor Allen Crockett to oil and gas operators in the Colorado Valley Field Office region. In that memorandum, Mr. Crockett explains the rationale underlying Defendants' reliance on the air quality analysis in the Roan EIS for projects located oustide the geographic scope of that EIS. Both Plaintiffs and Defendants oppose supplementing the record with this memorandum, arguing that the memorandum post-dates the challenged decisions and lacks support in the administrative record.

Extra-record materials that provide additional explanations of the reasons for an agency's decision are admissible where "the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials." *Am. Mining Cong.*, 772 F.2d at 626 (citing *Overton Park*, 401 U.S. at 420). Relying upon this exception, Defendant-Intervenors argue that because the Crockett memorandum explains Defendants' decision to tier the air

11

quality analysis for the challenged projects to the Roan EIS, it may be included in the administrative record. This argument does not justify supplementation of the record.

Despite their inconsistency in defining the parameters of the exceptions allowing supplementation of an administrative record with extra-record materials, courts have consistently recognized the impermissibility of post hoc rationalizations. Although the line of demarcation between an explanation and a rationalization is far from clear, courts apply a series of filters to reduce the chance of improper supplementation.[7]

As a threshold matter, courts only consider supplementation of an administrative record when the proffered materials are necessary to explain the agency's action. By requiring a showing of necessity, courts limit the possibility for error to those cases in which consideration of those materials is essential to meaningful judicial review.[8] Defendant-Intervenors have made no such showing in this case; that extra-record materials offer an explanation for Defendants' actions does not mean that they are necessary to explain Defendants' actions.[9]

---

[7] The difficulty in distinguishing rationalization from explanation is not limited to courts of law. Indeed, the difficulty is inherent in the English language; the roots of these terms, explain and rationalize, are often listed as synonyms of each other. *See, e.g.*, Websters Third New International Dictionary 1885 (1976).

[8] Relying on *Citizens for Envtl. Quality v. United States*, Defendant-Intervenors argue that a showing of necessity is not required. 731 F. Supp. 970, 982-83 (D. Colo. 1989). Although Defendant-Intervenors focus upon the court's statement that the materials at issue were merely "helpful," the court's decision hinged upon its finding that the materials were "necessary to effective judicial review." *Id*. Notwithstanding the confusion created by the court's clumsy diction, this case does not support a rule that would drastically increase the applicability of the limited exceptions allowing supplementation of an administrative record.

[9] A brief comparison with Plaintiffs' argument in support of their motion to supplement underscores this point. Unlike the Crockett memorandum, the DN/EAs for other projects in close proximity to the Spruce Creek MDP, the North Castle Springs MDP, and the West Mamm MDP are necessary to meaningful review of Plaintiffs' claim that Defendants failed to consider the cumulative impacts of those other projects in reaching the challenged decisions.

Furthermore, Defendant-Intervenors have failed to demonstrate how the memorandum explains materials Defendants actually considered in reaching the challenged decisions. In order to ensure that extra-record materials "explain the administrative record rather than [serve] as a substitute for it," *Lewis v. Babbitt*, 998 F.2d 880, 882 (10th Cir. 1993), there must be some evidence linking the purported explanation to the administrative record. Such evidence need not take the form of direct citation, but a party seeking to supplement the record with a post hoc explanation must marshal sufficient evidence to support a finding that the proferred explanation is implicit in the already extant administrative record.

Notwithstanding Defendant-Intervenor's conclusory statements to the contrary, they present no evidence that the Crockett memorandum actually explains the contents of the administrative record. The memorandum cites only to the Roan EIS. Although it makes generic reference to permitting decisions made after 2004, it does not specifically cite the DN/EAs for the challenged projects. Most significantly, Defendant-Intervenors fail to cite any evidence in the administrative records that Defendants employed the "contiguous airshed" rationale in reaching the challenged decisions.

Because Defendant-Intervenors have failed to establish either that the Crockett memorandum is necessary to meaningful review of Defendants actions or that the explanation contained in the Crockett memorandum is implicit in the administrative record, they have failed to overcome the presumption in favor of limiting review to the record before the agency at the time it made the challenged decisions. Accordingly, their motion to supplement is denied.

## CONCLUSION

Based on the foregoing discussion, Defendant-Intervenor's Joint Motion to Supplement

Administrative Records (doc. 40) is DENIED.  Plaintiffs' Motion to Strike and to Complete, or Alternatively Supplement, the Administrative Record (doc. 41) is DENIED in part and GRANTED in part.  The record shall be supplemented with the Decision Notices/Environmental Assessments for the projects specified in Exhibit G to Plaintiffs' motion.

Pursuant to the Joint Case Management Plan, the parties shall submit a proposed modified briefing schedule on or before June 5, 2012.

Dated: May 21, 2012                            BY THE COURT:

                                               **/s/ John L. Kane**
                                               Senior U.S. District Court Judge